Window World of St. Louis, Inc. v. Window World, Inc., 2015 NCBC 77.

STATE OF NORTH CAROLINA

WILKES COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
15 CVS 2

WINDOW WORLD OF ST. LOUIS,
INC.; WINDOW WORLD OF KANSAS
CITY, INC.; WINDOW WORLD OF
SPRINGFIELD/PEORIA, INC.; JAMES
T. LOMAX III; JONATHAN GILLETTE,
B&E INVESTORS, INC.; WINDOW
WORLD OF NORTH ATLANTA, INC.;
WINDOW WORLD OF CENTRAL
ALABAMA, INC.; MICHAEL
EDWARDS; MELISSA EDWARDS;
WINDOW WORLD OF CENTRAL PA,
LLC; ANGELL P. WESNER-FORD; and
KENNETH R. FORD, JR.,

Plaintiffs,

v.

WINDOW WORLD, INC. and WINDOW
WORLD INTERNATIONAL, LLC,

Defendants.

ORDER AND OPINION ON
DEFENDANTS' MOTION TO DISMISS
& PLAINTIFFS' MOTION FOR LEAVE
TO FILE SECOND AMENDED
COMPLAINT

{1}    **THIS MATTER** is before the Court upon Defendants Window World, Inc. and Window World International, LLC's (collectively, "Window World" or "Defendants") Motion to Dismiss Plaintiffs' Amended Complaint under Rules 12(b)(7) and 19 of the North Carolina Rules of Civil Procedure ("Motion to Dismiss") and Plaintiffs' Motion for Leave to File Second Amended Complaint under Rule 15(a) ("Motion to Amend") (collectively with Defendants' Motion to Dismiss, the "Motions") in the above-captioned case.  After considering the Motions, briefs in support of and in opposition to the Motions, and the arguments of counsel at a hearing on July 15, 2015, the Court hereby **GRANTS** Defendants' Motion to Dismiss and **GRANTS** Plaintiffs' Motion to Amend.

*Brooks, Pierce, McLendon, Humphrey & Leonard, LLP, by Jeffrey E. Oleynik, Charles E. Coble, and Benjamin R. Norman, and Keogh Cox & Wilson, Ltd., by John P. Wolff, III, for Plaintiffs Window World of St. Louis, Inc.; Window World of Kansas City, Inc.; Window World of Springfield/Peoria, Inc.; James T. Lomax III; Jonathan Gillette, B&E Investors, Inc.; Window World of North Atlanta, Inc.; Window World of Central*

*Alabama, Inc.; Michael Edwards; Melissa Edwards; Window World of Central PA, LLC; Angell P. Wesner-Ford; and Kenneth R. Ford, Jr.*

*Manning Fulton & Skinner, P.A., by Michael T. Medford, Judson A. Wellborn, and Jessica B. Vickers, for Defendants Window World, Inc. and Window World International, LLC.*

Bledsoe, Judge.

## I.

## PROCEDURAL AND FACTUAL BACKGROUND

{2}    On a motion to dismiss under Rule 12(b)(7) for failure to join a necessary party, the burden is on the movant to show the necessity of the absent party. As a result, the movant may present evidence outside the pleadings, such as affidavits and other extrinsic evidence. *See, e.g.*, *Mortgage Payment Prot., Inc., v. Genworth Mortg. Ins. Corp.*, No. 5:11-CV-00075-D, 2012 U.S. Dist. LEXIS 22051, at *36 (E.D.N.C. Jan. 20, 2012) (citing 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1359 (3d ed. 2007) ("in considering a Rule 12(b)(7) motion to dismiss, a district court 'is not limited to the pleadings'")); *see also, e.g.*, *McShan v. Sherrill*, 283 F.2d 462, 464 (9th Cir. 1960) ("evidence concerning absent indispensable parties may also be presented by the affidavit of any person having knowledge bearing upon their existence").[1]    Although the Court may consider evidence outside the pleadings on a Rule 12(b)(7) motion, it "must accept all factual allegations in the complaint as true and draw inferences in favor of the non-moving party." *Quinn v. Fishkin*, 2015 U.S. Dist. LEXIS 101518, at *10 (D. Conn. Aug. 4, 2015) (quoting 5C Wright & Miller, *Federal Practice and Procedure* at § 1359).

{3}    The Court recites herein the allegations set forth in the pleadings and in attached documents that are relevant for purposes of resolving the present Motion.

{4}    Plaintiffs are Window World franchisees that conduct business in Missouri, Pennsylvania, Georgia, and Alabama.  Plaintiffs James T. Lomax, III ("Lomax") and

---

[1] The Court has not been able to locate a North Carolina state court decision discussing the proper standard to apply to a motion under Rule 12(b)(7).  The Court therefore may consult federal authority for guidance, particularly here because Rule 12(b) of the Federal Rules of Civil Procedure is essentially the same as the North Carolina Rule. *See, e.g.*, *Sutton v. Duke*, 277 N.C. 94, 101, 176 S.E.2d 161, 165 (1970).

Jonathan Gillette ("Gillette") have been referred to, in briefing and at oral argument, as the "Lomax/Gillette Plaintiffs" to distinguish them from the "Roland Plaintiffs," who are Window World franchisees that conduct business in Louisiana, Texas, and Pennsylvania and have filed suit alleging substantially similar facts in actions in this Court (the "Roland Action") and in state court in Louisiana.[2] Plaintiffs, including the Lomax/Gillette Plaintiffs, and the Roland Plaintiffs, are represented by the same counsel in both North Carolina actions.

{5}     Plaintiffs allege that Window World is a franchisor that operates a network of franchises across the United States that includes Plaintiffs' franchises. Both Window World and Plaintiffs are in the business of selling and installing vinyl replacement windows, doors and siding, and related accessories to the public. (Am. Compl. ¶ 32.)

{6}     Plaintiffs allege that they became aware several years into the franchisor-franchisee relationship with Window World that Window World had failed to disclose certain information about the financial arrangements between Window World, its franchisees, and its preferred supplier in violation of the federal Franchise Disclosure Rule codified at 16 C.F.R. § 436.1, et seq. (Am. Compl. ¶ 91.) Specifically, Plaintiffs allege that Window World caused them and other franchisees financial harm by failing to obtain the best available wholesale price from the preferred supplier as promised. (Am. Compl. ¶ 106.) Plaintiffs also contend that Window World received kickbacks and rebates from the preferred supplier that were not disclosed to Plaintiffs or other franchisees. (Am. Compl. ¶ 105.)

{7}     In an effort to reaffirm the business relationship with the Lomax/Gillette Plaintiffs and the Roland Plaintiffs after these issues were raised, Window World and the Lomax/Gillette and Roland Plaintiffs discussed and, the Lomax/Gillette Plaintiffs allege, eventually reached an oral settlement agreement with Window World, the terms of which were reflected in a series of email correspondences summarizing the

---

[2] The Roland Action is filed in this Court under case number 15 CVS 1 (Wilkes County Superior Court), and is captioned as *Window World of Baton Rouge, LLC v. Window World, Inc.* The Court has consolidated the Roland Action with the present action for purposes of discovery.

parties' discussions and eventually consolidated into a written draft settlement agreement in January 2014 that was never signed (the "Draft Settlement Agreement" or "Agreement"). (Am. Compl. ¶ 182; Coble Aff. ¶¶ 5–21, Exs. A–L.) The parties to the alleged Draft Settlement Agreement with Window World were Plaintiffs Lomax and Gillette, as well as James W. Roland ("Roland") and the respective Window World franchises that each owned. (Am. Compl. ¶ 178; Defs.' Br. Supp. Mot. Dismiss, p. 10; Pls.' Br. Opp. Mot. Dismiss, p. 15.)

{8}    Among other things, the alleged Draft Settlement Agreement granted rights of exclusive operation to each party-franchise within an agreed, identified set of counties. Also as part of the alleged Agreement, Window World was required to pay a total of $1.5 million to Plaintiffs' counsel to be held in trust for distribution to the Lomax/Gillette and Roland Plaintiffs upon finalization of the settlement ("Trust Deposit"). Window World transferred this sum to Plaintiffs' counsel, requesting that it be held in trust, on December 30, 2013.

{9}    A year later, on January 2, 2015, Plaintiff James Lomax and his franchises filed the Complaint commencing this action ("Complaint") in Wilkes County Superior Court (the "Lomax Action"). Plaintiffs amended the Complaint on February 16, 2015 ("Amended Complaint") to add Plaintiff Gillette and his franchises as party-plaintiffs as well as additional franchisees Michael and Melissa Edwards and Kenneth Ford and Angell Wesner-Ford and their franchises (collectively, "Plaintiffs" or "all Plaintiffs").

{10}    In Count 1 of the Amended Complaint, the Lomax/Gillette Plaintiffs seek a declaratory judgment against Window World finding that (1) the Draft Settlement Agreement is binding on Window World and that the Lomax/Gillette Plaintiffs are permitted to use Window World trademarks as agreed upon in the Agreement, and (2) the Lomax/Gillette Plaintiffs have the right to operate their franchises as exclusive franchisees of Window World in each of the counties specified in the Agreement.

{11}    In Count 2 of the Amended Complaint, the Lomax/Gillette Plaintiffs seek an injunction requiring Window World to (1) execute a document to memorialize the

parties' Draft Settlement Agreement and (2) cease and desist from any and all unlawful attempts to repudiate the Draft Settlement Agreement or to prohibit the Lomax/Gillette Plaintiffs' use of Window World's trademarks as provided in the Agreement. (Am. Compl. ¶ 217–33.) For ease of reference, the Court will identify the Lomax/Gillette Plaintiffs' claims for declaratory and injunctive relief – Counts 1 and 2 – as the "Settlement Claims."

{12} In Counts 3 through 5, all Plaintiffs – including the Edwards and Ford Plaintiffs and their respective franchises – seek declarative and injunctive relief finding that their Licensing Agreements are indeed franchise agreements protected by the federal Franchise Disclosure Rule and further that they are entitled to operate, using Window World trademarks, exclusively within an agreed, identified set of counties. (Am. Compl. ¶ 234–50.) All Plaintiffs seek judgment allowing reformation of their prior Licensing Agreements to include these terms. (Am. Compl. ¶ 251–58.)

{13} Alternatively, all Plaintiffs seek monetary damages for breach of contract and other related claims. Plaintiffs have asserted a number of claims for relief in their Amended Complaint, including claims for breach of contract, breach of the covenant of good faith and fair dealing, fraud, negligent misrepresentation, unfair or deceptive trade practices, unjust enrichment, and fraudulent transfer. (Am. Compl. ¶ 259–317.) Defendants do not seek dismissal of these claims on this Motion. The Court will refer to these remaining claims – Counts 6–13 – as the "Damages Claims."

{14} In their Prayer for Relief in the Amended Complaint, Plaintiffs request, in addition to the declaratory and injunctive relief discussed above, that this Court "disburse to the franchisees the $1.5 million settlement payment [i.e., the Trust Deposit]." (Am. Compl., Prayer for Relief p. 81.) Plaintiffs' prayer does not specify which franchisee-Plaintiffs are allegedly entitled to the Trust Deposit, although the Draft Settlement Agreement – to which Lomax, Gillette, and Roland are parties – called for the Trust Deposit to be made.[3] (Defs.' Mot. Dismiss, Ex. 4; Defs.' Br. Supp. Mot. Dismiss, Ex. 3.)

---

[3] A letter dated December 30, 2013 from Window World to Plaintiffs' counsel reflecting the agreement for Window World to pay $1.5 million dollars in settlement calls for the "release [of] the funds to your

{15}    On January 5, 2015, the Roland Plaintiffs filed the Roland Action in North Carolina state court, asserting damages claims – but not seeking declaratory or injunctive relief – on essentially the same facts asserted in the Lomax Action.  That same day, the Roland Plaintiffs filed an action in Louisiana state court, again alleging the same operative facts, and this time seeking declaratory and injunctive relief similar to the relief sought in Counts 1 and 2 in the Lomax Action.  After Defendants removed the case to federal court in Louisiana, the Roland Plaintiffs voluntarily dismissed the Louisiana action on April 20, 2015.  As a result, there are now two separate actions currently before this Court based on similar operative facts: the Lomax Action involving the Lomax/Gillette/Edwards/Ford Plaintiffs – which asserts Settlement and Damages claims – and the Roland Action involving the Roland Plaintiffs – which asserts only Damages Claims.

{16}    Defendants filed their Motion to Dismiss Counts 1 and 2 on Rule 12(b)(7) grounds on March 23, 2015, and the parties completed briefing on April 30, 2015.[4] Plaintiffs filed the Motion to Amend to add additional plaintiffs and to add additional facts to supplement their fraudulent transfer claim on April 13, 2015, and the parties completed briefing on the Motion to Amend on May 19, 2015.  The Court held a hearing on both matters on July 15, 2015, at which all parties were represented by counsel.  The Motions are now ripe for resolution, and the Court will address each Motion in turn.

## II.

## ANALYSIS

A.    <u>Motion to Dismiss for Failure to Join Necessary Party</u>

{17}    Rule 19(a) of the North Carolina Rules of Civil Procedure requires that necessary parties "be joined as plaintiffs or defendants."  N.C. Gen. Stat. § 1A–1, Rule

---

*clients* pursuant to a written settlement agreement and associated documentation executed by the parties."  (Defs.' Mot. Dismiss, Ex. 1) (emphasis added).

[4] Defendants' Motion to Dismiss originally sought dismissal of Plaintiffs' fraudulent transfer claim on grounds that Plaintiffs had failed to state a claim upon which relief could be granted.  By email dated July 13, 2015, Defendants abandoned this aspect of their Motion to Dismiss and submitted that they would advance their Motion to Dismiss only on Plaintiffs' first and second claims for failure to join a necessary party under Rule 12(b)(7).

19(a) (2015).  A necessary party is one that is "united in interest" and is "so vitally interested in the controversy that a valid judgment cannot be rendered in the action completely and finally determining the controversy without his presence . . . ." *Strickland v. Hughes*, 273 N.C. 481, 485, 160 S.E.2d 313, 316 (1968).  Once a party is identified as necessary, he "must" be joined. *Crosrol Carding Dev., Inc. v. Gunter & Cooke, Inc.*, 12 N.C. App. 448, 451, 183 S.E.2d 834, 837 (1971).  Dismissal under Rule 12(b)(7) is proper only when the defect cannot be cured.  *Howell v. Fisher*, 49 N.C. App. 488, 491, 272 S.E.2d 19, 22, *cert. denied*, 302 N.C. 218, 277 S.E.2d 69 (1981).

{18}     Alternatively, a person who is not united in interest may nonetheless be a proper party when his "presence is not essential in order for the court to adjudicate the rights of others," but his interest "may be affected by a decree."  *Wallach v. Linville Owners Ass'n*, ___ N.C. App. ___, ___, 760 S.E.2d 23, 26 (2014) (quotations and citation omitted).  Simply stated, necessary parties must be joined in an action; in contrast, proper parties are not required to be joined but may be joined.  *Crosrol*, 12 N.C. App. at 451, 183 S.E.2d at 837.

{19}     The Court of Appeals has previously set out the proper procedure the Court should follow in deciding a motion under Rule 12(b)(7):

> 'When faced with a motion under Rule 12(b)(7), the Court will decide if the absent party should be joined as a party. If it decides in the affirmative, the court will order him brought into the action. However, if the absentee cannot be joined, the court must then determine, by balancing the guiding factors set forth in Rule 19(b), whether to proceed without him or to dismiss the action. . . . A dismissal under Rule 12(b)(7) is not considered to be on the merits and is without prejudice.'

*Id.* at 453–54, 183 S.E.2d at 838 (quoting 5 Wright & Miller, *Federal Practice and Procedure*, § 1359, pp. 628, 631).

{20}     Defendants contend that Roland and his Window World franchisees are necessary parties to Count 1 and 2 in the Lomax Action, and that the Lomax/Gillette Plaintiffs' failure to join the Roland Plaintiffs as party-plaintiffs should result in dismissal of these two claims.  Specifically, Defendants argue that the Roland Plaintiffs have both an interest in the adjudication of the validity of the Draft

Settlement Agreement and an interest in the disbursement of the Trust Deposit, and thus, are united in interest with the Lomax/Gillette Plaintiffs and must be joined as party-plaintiffs in the Lomax Action.

{21}    In contrast, the Lomax/Gillette Plaintiffs argue that the Roland Plaintiffs are proper but not necessary parties to the Settlement Claims, contending that the Roland franchisees' rights will not be adjudicated in the Lomax Action, because a determination of the existence of a settlement agreement between the Lomax/Gillette Plaintiffs and Window World will not affect whether the Roland Plaintiffs have a settlement agreement with Window World. (Pls.' Br. Opp. Mot. Dismiss, p. 13.) The Lomax/Gillette Plaintiffs urge the Court to view Window World's settlement with the Lomax/Gillette Plaintiffs as separate and distinct from Window World's settlement with the Roland Plaintiffs, and as such, contend that the Roland Plaintiffs are not necessary parties to the Settlement Claims in the Lomax Action.  Further, the Lomax/Gillette Plaintiffs argue that the Roland Plaintiffs' rights to the Trust Deposit will not be impacted should the Court order disbursement of the Trust Deposit to the Lomax/Gillette Plaintiffs because, according to the Lomax/Gillette Plaintiffs, the Roland Plaintiffs could seek to recover their share of the Trust Deposit from the Lomax/Gillette Plaintiffs in a separate action. (Pls.' Br. Opp. Mot. Dismiss, p. 10.)

{22}    To assess the parties' competing contentions, the Court finds it significant that the Lomax/Gillette Plaintiffs seek to establish in the Lomax Action the existence, validity, terms, and enforceability of the Draft Settlement Agreement, all of which Defendants deny, as well as their right to, and disbursement to them of, the Trust Deposit. At the same time, the Lomax/Gillette Plaintiffs allege and acknowledge that (i) the Roland Plaintiffs were parties to the alleged Draft Settlement Agreement, (ii) the Lomax/Gillette and Roland Plaintiffs entered into a single settlement agreement with Window World that purported to set forth the settling parties' rights as between the Lomax/Gillette and Roland Plaintiffs, on the one hand, and Window World, on the other, and (iii) Window World made a single Trust Deposit payment which was to be held in trust and paid to the Lomax/Gillette and Roland Plaintiffs as the parties to the settlement.  (Am. Compl. ¶ 192.)  In these circumstances, the Court concludes

that the resolution of the Settlement Claims in the Lomax Action will necessarily involve a determination of the Roland Plaintiffs' rights in connection with the Draft Settlement Agreement and the Trust Deposit.

{23}    In particular, the Court concludes that a judicial determination of the existence, validity, terms and enforceability of the Draft Settlement Agreement in the Lomax Action will affect the Roland Plaintiffs' rights – and will adversely affect those rights if Defendants succeed in defeating the Lomax/Gillette Plaintiffs' claims. *See, e.g.*, *N.C. Monroe Const. Co. v. Guilford Cnty. Bd. Of Ed.*, 278 N.C. 633, 640, 180 S.E.2d 818, 822 (1971) (finding that an absent party is a necessary party because "[w]hile [the absent party], not being a party to this action, would not be legally bound by a judgment rendered herein, as a practical matter, its rights, if any, under the contract with the defendant would be adversely affected by a declaration such as the plaintiff seeks in this action"); *Moore Printing, Inc. v. Automated Printing Solutions, LLC*, 216 N.C. App. 549, 556, 718 S.E.2d 167, 172 (2011) ("[Plaintiff] requests this Court to rescind a contract with a party that is not before the Court. . . . As [absent party] was not made a party to the suit, it is not possible to rescind the [contract].").

{24}    Moreover, it is well-established in North Carolina that all parties claiming an interest in contested assets must be party to a suit affecting those assets. *See e.g.*, *Dunn v. Cook*, 204 N.C. App. 332, 337, 693 S.E.2d 752, 756 (2010) (quoting *First Nat'l Bank v. Thomas*, 204 N.C. 599, 603, 169 S.E. 189, 191 (1933)) ("The general rule in cases . . . respecting the trust property, brought either by or against the trustees, [is that] the . . . beneficiaries as well as the trustees also, are necessary parties.") (quotations omitted); *Hassellman v. Barnes*, 207 N.C. App. 373, 374–75, 700 S.E.2d 69, 70 (2010) (same); *see also Delta Fin. Corp. v. Paul D. Comanduras & Assocs.*, 973 F.2d 301, 305–06 (4th Cir. 1992) ("The cases are virtually unanimous in holding that in suits between parties to a contract seeking rescission of that contract, all parties to the contract, and others having a substantial interest in it, are necessary parties. The same principle applies to suits arising out of disputes between multiple claimants to a common fund; all such claimants must be joined if feasible.") (internal citations omitted) (applying Virginia law).  Accordingly, here, where the Lomax/Gillette and

Roland Plaintiffs appear to assert equal rights and interests in the Trust Deposit, the Court concludes the Roland Plaintiffs must be joined in the Lomax Action because the resolution of the Settlement Claims will necessarily affect their rights to the Trust Deposit.[5]

{25}     Therefore, based on the Court's review of the allegations of the Complaint, accepted as true, and the relevant evidence of record, the Court concludes that the Roland Plaintiffs will be "directly affected" by the outcome of the Settlement Claims, are "united in interest" with the Lomax/Gillette Plaintiffs, and are "so vitally interested" in the Settlement Claims that a "valid judgment cannot be rendered" in the Lomax Action "completely and finally determining the controversy without [the Roland Plaintiffs'] presence." *See e.g., Begley v. Emp't Sec. Comm'n*, 50 N.C. App. 432, 438, 274 S.E.2d 370, 375 (1981) ("[A] 'necessary' party is one whose interest will be directly affected by the outcome of the litigation.") (citation omitted); *Strickland*, 273 N.C. at 485, 160 S.E.2d at 316.  Thus, the Court concludes that the Roland Plaintiffs are necessary parties to the Lomax Action.

B.     <u>Motion to Amend</u>

{26}     Rule 15(a) of the North Carolina Rules of Civil Procedure states that when the time for amending a complaint as a matter of course has expired, "a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." N.C. Gen. Stat. § 1A–1, Rule 15(a) (2015).  Reasons justifying denial of an amendment include: (1) undue delay, (2) bad faith, (3) undue prejudice, (4) futility of amendment, and (5) repeated failure to

---

[5]  Plaintiffs cite *Pittman v. Barker*, 117 N.C. App. 580, 452 S.E.2d 326 (1995), to support their contention that there is no per se rule in North Carolina that all parties claiming an interest in contested funds must appear as necessary parties in any related action and that the Roland Plaintiffs should therefore not be joined as parties here. (Pls.' Br.. Opp. Mot. Dismiss, p. 19.) *Pittman*, however, involved a testamentary trust that was "explicit in determining the proportionate share to which each of the remainder beneficiaries [was] entitled" in circumstances where "there [was] no unascertained interest in the trust." *Pittman*, 117 N.C. App. at 587, 452 S.E.2d at 330.  As a result, the Court of Appeals concluded that the remainder beneficiaries were not necessary parties because their presence would have no bearing on the Court's determination of the total amount of damages, circumstances very different from those here where the competing rights to the Trust Deposit are at issue.

cure defects by previous amendments. *Martin v. Hare*, 78 N.C. App. 358, 361, 337 S.E.2d. 632, 634 (1985) (citations omitted).

{27}    Plaintiffs propose to amend the Amended Complaint to add additional Window World franchisees as plaintiffs, relying on substantially the same allegations that are already before this Court in the Lomax Action, and also to add additional facts and allegations in support of their fraudulent transfer claim.  The Court finds no reason to depart from the general rule that leave to amend should be freely given at this early stage of the litigation and therefore concludes that Plaintiffs' Motion to Amend should be granted.

III.

CONCLUSION

{28}    **WHEREFORE**, for the reasons set forth above:

   a. the Court **GRANTS** Defendant's Motion to Dismiss and **ORDERS** that the Roland Plaintiffs shall be joined as parties to this action within thirty (30) days of the entry of this Order and Opinion. If Roland is not joined within thirty (30) days of the entry of this Order and Opinion, the Court will dismiss Plaintiffs' Counts 1 and 2 without prejudice[6]; and

   b. the Court **GRANTS** Plaintiffs' Motion to Amend and **ORDERS** that Plaintiffs shall file their Second Amended Complaint within thirty (30) days of the entry of this Order and Opinion.


**SO ORDERED**, this the 10th day of August, 2015.


/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Special Superior Court Judge
 for Complex Business Cases

---

[6] "A dismissal under Rule 12(b)(7) is not considered to be on the merits and is without prejudice." *Crosrol*, 12 N.C. App. at 453–54, 183 S.E.2d at 838.